[No. 16939.	Department Two.	February 14, 1922.]

W. B. WHITE, *Appellant,* v. T. W. LITTLE COMPANY,
*et al., Respondents.*[1]

EVIDENCE (149)—PAROL EVIDENCE TO VARY WRITING—SALE OF
CHATTELS. Where orders for trucks and trailers provided that, at
time of delivery, conditional sales contracts were to be executed
and that no verbal agreement would be recognized, it must be
presumed that the conditional sales contracts entered into con-
tained all the elements of the contracts, and they could not be
varied by alleged oral agreements as to equipment and time and
place of delivery.

SALES (78) — PERFORMANCE — DELAY IN DELIVERY — WAIVER — EF-
FECT OF ACCEPTANCE. A purchaser's acceptance of personal property
in fulfillment of an executory contract of sale is a waiver of objection
that it was not delivered at the time agreed, unless his acceptance
was qualified by a reservation of the right to claim damages caused
by the delay.

SAME (78). Where, after placing an order for trucks and trail-
ers at a designated price, the purchaser afterwards executes con-
ditional sale contracts for an increased price, under threats of the
seller not to make delivery otherwise, and necessities of the pur-
chaser's business forced him to agree to pay in order to get the
trucks, he cannot recover the excess price in an action for dam-
ages, in case no protest was made at the time, and no payments
covering the excess have been made, his proper remedy being one
for reformation of the contract.

Appeal from a judgment of the superior court for
Pierce county, Card, J., entered May 12, 1921, upon
sustaining demurrers to the complaint, dismissing an
action on contract. Affirmed.

*Cooley, Horan & Mulvihill,* for appellant.

*Wm. H. Pratt,* for respondents.

HOLCOMB, J.—This action arose from the execution
of two orders for the sale of two trucks and two
trailers. A complaint, omitting the formal parts, was
filed, in words as follows:

"That on the 22d day of June, 1920, the plaintiff

[1]Reported in 204 Pac. 186.

made the following contract in writing for a truck and trailer:

" 'T. W. Little Co.,
Everett, Wash., U. S. A., 6/22, '20.
Order No.................
Invoice No.................

Please enter my order for the following:

| Quantity | Model | Description | Price |
|----------|-------|-------------|-------|
| One | R | Signal Trucks | $5,800.00 |
| One | 7½ ton | Trailer | 1,750.00 |

If other trailer selected price to be arranged.

" 'To be delivered on arrival, for which I agree to pay the sum of Seven Thousand Five Hundred Fifty and no/100 dollars ($7,550) F. O. B. Everett; Terms balance at 8 per cent, 12 months.

" 'I herewith hand you advance payment allowance on second-hand model M. Signal, Motor No. 4366, Chasis No. 2908, trailer of three thousand five hundred dollars ($3,500) as guarantee of good faith, which amount shall be deducted from the above price at final settlement.

Sold by C. P. Abbott.

Accepted: T. W. Little Co.

" 'By T. W. Little.       (Signed) W. B. White,
Address: 3532 Rucker Ave.

" 'At the time of delivery a conditional sales contract will be executed in the regular form of.........
reserving the title until full payment.

" 'No verbal agreement recognized.'

"That before the defendant Little Company acted on said order the plaintiff selected another type of trailer at an agreed purchase price of Eighteen Hundred Dollars ($1,800), making the total purchase price of truck and trailer in said order seventy-six hundred dollars ($7,600).

"That there was to be shipped with said order a kit of tools to be used with said truck and trailer of the value of seventy-five dollars ($75).

"That the plaintiff was informed by the defendant Little Company, through its agents, the said truck was then manufactured and ready for shipment at the factory of the manufacturer at Detroit, Michigan, and

that they would wire the order and said truck would arrive at Everett not later than ten days from the date of said order.

"That said truck was not manufactured at the time of said order and had to be manufactured before said order could be filled, and said truck was not shipped to Everett at all, but was shipped to Tacoma, Washington, and arrived at Tacoma, on the 15th day of September, 1920, and the defendant, T. W. Little Company, did not deliver possession of said truck to this plaintiff until the 22nd day of September, 1920.

"That by the delay in the shipping and delay in the obtaining possession of said truck, this plaintiff was damaged in the sum of forty ($40) dollars per day for a period of sixty-seven days.

"For a second cause of action the plaintiffs allege:

"Plaintiffs reallege paragraphs I, II, III and IV and make them a part of their second cause of action, and further allege:

"That he was compelled to send to Renton, Washington, to get possession of said truck and trailer; that the defendant T. W. Little Company, refused to deliver the same at Everett, Washington.

"That plaintiff was forced to pay the sum of fifty dollars ($50) to bring said truck and trailer from Renton, Washington, to Everett, Washington, and said sum was a reasonable sum for said service, and plaintiff was damaged in said sum.

"As a fourth cause of action plaintiff alleges paragraphs I, II, III and IV, and makes them a part of the fourth cause of action, and further alleges:

"That said truck arrived at Tacoma, Washington, on September 15th, 1920; that upon the arrival of said truck this plaintiff demanded possession of the same; that the defendant, T. W. Little Company, refused to permit plaintiff possession: that defendant, T. W. Little Company, was insolvent and refused, neglected and was unable to pay to the transportation company the freight thereon and said transportation company refused to permit the plaintiff to inspect said truck and said defendant, T. W. Little Company, refused to get possession from said transportation company and

deliver the same to plaintiff unless plaintiff would execute the contract marked Exhibit 'A', and attached hereto and made a part of this complaint.

"That plaintiff was unable to purchase other trucks; that plaintiff had a large amount of lumber that he had to remove; that he had a great number of men employed who were forced to remain idle waiting for said trucks; that there were no other trucks in the market procurable by the plaintiff at said time similar to the trucks ordered herein, and if plaintiff did not sign the contract, Exhibit 'A', he would lose a larger sum of money which he had invested in timber, and lose the sum of money which he had advanced to the defendant herein and agreed to pay under said contract, and that he would have no recourse for said loss; that the said defendant, T. W. Little Company, threatened to leave said car with said transportation company or divert it to other points and as a result of said acts on the part of said defendant, T. W. Little Company, acting through its agent T. W. Little, the said plaintiff signed and executed Exhibit 'A'; that under said Exhibit 'A' he was required to pay for said truck and trailer the sum of seventy-nine hundred and ninety dollars and ten cents ($7,990.10), whereas said defendant had agreed to sell said car as in the order above set forth for the sum of seventy-six hundred dollars ($7,600); that said Exhibit 'A' was executed by said plaintiff under duress as aforesaid.

"For a fifth cause of action against the defendant, plaintiff alleges:

"That on the 18th day of July, 1920, the plaintiff and the defendant entered into the following contract of sale:

" 'T. W. Little Co.

Everett, Wash., U. S. A. 7/18, '20.

Please enter our order for the following:

Order No....................
Invoice No....................

| Quantity | Make | Model· | Description | Price |
|----------|------|--------|-------------|-------|
| 1 | Signal | M. or R. | 3½ or 5 Ton Signal Truck and Trailer' | |

" 'This is a credit Memo to apply on either
    3½ or 5 ton Signal.
To be delivered as soon as possible after ordered
shipped. For which ...... agrees to pay the sum of
market price on either truck at time of delivery
($......) F. O. B............; terms to be arranged
same as other deal.
    ............herewith hand you advance payment of
allowance for one used 3½ ton Signal truck to be
Dollars ($3,500.00) as guarantee of good faith, which
amount shall be deducted from the above price at final
settlement.

" 'Sold by.........

" 'Accepted: T. W. Little Co.,

    " 'By T. W. Little, President.

        " '(Signed) W. B. White,

        " 'Address: 3532 Rucker Ave.,

    " 'At the time of delivery a conditional sales con-
tract will be executed in the regular form of reserving
title until full payment.

    " 'No verbal agreement recognized.'

    "That said truck and trailer was to cost seventy-six
hundred dollars ($7,600) furnished complete with kit
of tools.

    "That defendant failed, neglected and refused to
deliver any tools with said truck and plaintiff was
damaged in the sum of seventy-five dollars ($75).

    "As a sixth cause of action against the defendant,
T. W. Little Company, this plaintiff realleges para-
graphs I and II of the fifth cause of action, and further
alleges:

    "That plaintiff was compelled to send to Renton,
Washington, to get possession of said truck and
trailer; that the defendant, T. W. Little Company,
refused to deliver the same at Everett, Washington.

    "That plaintiff was forced to pay the sum of fifty
dollars ($50) to bring said truck and trailer from
Renton, Washington, to Everett, Washington, and
said sum was a reasonable sum for said services and
plaintiff was damaged said sum.

    "As a seventh cause of action this plaintiff alleges:

    "That said truck arrived at Tacoma, Washington,

on September 15th, 1920; that upon the arrival of said truck this plaintiff demanded possession of the same that the defendant, T. W. Little Company, refused to permit plaintiff possession; that defendant, T. W. Little Company, was insolvent and refused, neglected and was unable to pay to the transportation company the freight thereon and said transportation company refused to permit the plaintiff to inspect said truck and said defendant, T. W. Little Company, refused to get possession from said transportation company and deliver the same to plaintiff unless plaintiff would execute the contract marked Exhibit 'B', and attached hereto and made a part of this complaint.

"That plaintiff was unable to purchase other trucks; that plaintiff had a large amount of lumber that he had to remove; that he had a great number of men employed who were forced to remain idle waiting for said trucks; that there were no other trucks in the market procurable by the plaintiff at said time similar to the trucks ordered herein, and if plaintiff did not sign the contract, Exhibit 'B', he would lose a large sum of money which he had invested in timber, and lose the sum of money which he had advanced to the defendant herein and agreed to pay under said contract, and that he would have no recourse for said loss; that the said defendant, T. W. Little Company, threatened to leave said car with said transportation company or divert it to another point and as a result of said acts on the part of said defendant, T. W. Little Company, acting through its agent, T. W. Little, the said plaintiff signed and executed Exhibit 'B'; that under said Exhibit 'B' he was required to pay for said truck and trailer the sum of eighty-one hundred eighty-three dollars and four cents ($8,183.04) where said defendant had agreed to sell said car as in the order above set forth for the sum of seventy-six hundred dollars ($7,600); that said contract, Exhibit 'B', was executed by said plaintiff under duress as aforesaid.

"That the defendant, T. W. Little Company, has assigned all its right, title and interest in said contract to H. K. Todd, defendant herein as security for a loan,

the amount of said loan being unknown to this plaintiff.''

Upon this complaint the plaintiff prayed for judgment on the first cause of action for $2,860; on the second cause of action for $75; on the third cause of action, $50; on the fourth cause of action, $390; on the fifth cause of action, $75; on the sixth cause of action, $50; on the seventh cause of action, $583; that these contracts A and B be reformed by the court to comply with the orders set forth in said complaint, or the same be cancelled for duress imposed upon the plaintiff, and that if the same are not cancelled, that the amount of the judgment herein prayed for be ordered offset against the plaintiff to be made under said contracts A and B, and the plaintiff have such other relief as may seem justifiable from the facts or equities in the matter.

Exhibit ''A'' is a conditional sale contract dated September 16, 1920, by which the respondent T. W. Little Company agrees to sell to appellant, as equipped, one Model ''R'' Signal Truck and one 8½-ton Pacific Car and Foundry Company trailer, for the sum of $7,990.10, upon installments, as follows: $3,500 to be paid on the 16th day of September, 1920, and $374 on the 16th day of each month thereafter until the full sum is paid, the title to remain in the vendor, and if any default is made in any payment, or if the vendor at any time deems itself insecure, it may take possession of the property, retain all payments made as liquidated damages, or may sell the property under a mortgage foreclosure and apply the proceeds to any deficiency, and have a deficiency judgment for the balance with allowances for costs, etc., which contract is signed by vendor and vendee.

Exhibit B is identical with exhibit A, except that the

total amount to be paid under exhibit B is $8,183.04, and installments of $390 are to be paid on the same day, and the last installment is $393.04, and the number of the truck and trailer is different.

To this complaint each of the defendants filed a general demurrer on the ground that the complaint did not state facts sufficient to constitute a cause of action. The lower court sustained these demurrers, and the plaintiff refusing to further plead, the court signed and entered a judgment dismissing the action, and from this judgment the plaintiff appeals to this court.

There is no doubt that as to the first, second, third, fifth and sixth causes of action, as set forth in the complaint of appellant, the demurrers were properly sustained.

The first cause of action was for damages at the rate of $40 per day for 67 days' delay in the delivery of one of the trucks. It is contended that it was orally agreed between the parties that the truck would be delivered in ten days, but was not delivered until the time alleged. It is not alleged, however, that there was any protest made when the truck did arrive, and it is shown that appellant executed his written promise to pay for the truck when it arrived and when he received it, apparently without complaint or protest.

The second cause of action is for a kit of tools alleged to have been agreed to be a part of the equipment of the truck, although the written agreement signed by appellant states that he accepts the truck as equipped.

The third cause of action alleged is for $50 because the truck was not delivered at the place where appellant contends it should have been delivered, but it is shown that he received it at the other place, and this would seem to constitute a waiver of the place of delivery.

The fifth cause of action is the same as the second, except that it was for another kit of tools on another truck, but the conditions were the same.

The sixth cause of action is the same as the third, except that it applies to another truck; but the conditions of receiving are the same. The trucks alleged in both causes of action were accepted and contracted for in writing.

The orders contained the clause: "No verbal agreement recognized." When the trucks arrived, the contracts were reduced to writing in the form of conditional sale contracts, which are presumed to contain all the elements of their contracts. Under the allegations as to these causes of action it is plain that they are nothing more than efforts to add oral agreements of the parties and thereby vary the contracts, which cannot be done. *Buffalo Pitts Co v. Shriner,* 41 Wash. 146, 82 Pac. 1016; *Farley v. Letterman,* 87 Wash. 641, 152 Pac. 515; *Western Farquhar Machinery Co. v. Pierce,* 108 Wash. 621, 185 Pac. 570.

As to the failure to deliver the trucks on time, where in each case it was one entire delivery, a vendee's acceptance of the property in fulfillment of an executory contract of sale is a waiver of objection that it was not delivered at the time agreed, unless his acceptance was qualified by a reservation of the right to claim damages caused by the delay. *Minneapolis Threshing Machine Co. v. Hutchins,* 65 Minn. 89, 67 N. W. 807; 35 Cyc. 175.

The fourth and seventh causes of action are for damages alleged because appellant was compelled, under duress, to sign the contracts for the purchase of the trucks for a greater amount than the purchase price of the trucks as named in the original orders. These causes of action come near stating causes of action for

some relief, but fall short, as we shall presently show. It is to be noted that they contain no allegations that the contracts were signed for the additional amounts over the original orders, under protest, or that the additional amounts have been paid. It would seem that the utmost that appellant could demand in the situation shown, if the contracts varying from the original bargains had been made *under protest,* would be the reformation of the contracts, if it be conceded that his allegations of duress are sufficient. Without elaborate discussion upon the subject of duress, we have held that the recovery of excessive amounts of money paid under duress, or restraint of goods, by a demandant, will require the return of the money so paid, if paid under protest. *Sunset Copper Co. v. Black,* 115 Wash. 132, 196 Pac. 640.

We are of the opinion that the situation shown of undue advantage and oppression, and the threats alleged to have been made by the vendor of the trucks to appellant when the trucks arrived were oppressive and coercive; but, in the absence of complaint or protest made at the time, we cannot hold the payments contracted to be made but not made to have been involuntary. The distinction between voluntary and involuntary payments has been very clearly pointed out in many cases. *Tripler v. New York,* 125 N. Y. 617, 26 N. E. 721; *Scholey v. Mumford,* 60 N. Y. 498; *Bates v. New York Insurance Co.,* 3 Johns. Cas. (N. Y.) 238; *Buckley v. New York,* 30 App. Div. 463, 52 N. Y. Supp. 452; *Carew v. Rutherford,* 106 Mass. 1, 8 Am. Rep. 287; *Radich v. Hutchins,* 95 U. S. 210.

In the last cited case, Mr. Justice Field stated:

"To constitute the coercion or duress which will be regarded as sufficient to make a payment involuntary, . . . . . there must be some actual or threatened

exercise of power possessed, or believed to be possessed, by the party exacting or receiving the payment over the person or property of another, from which the latter has no other means of immediate relief than by making the payment.''

In *Bates v. New York Insurance Co., supra,* it was stated:

''The equitable extension of this kind of action has of late been so liberal, that it will lie to recover money obtained from anyone, by extortion, imposition, oppression, or taking an undue advantage of his situation. In the present case, there was, at least, an undue advantage taken of the plaintiff's situation. . . . . The money being inequitably demanded of him, he must be presumed to have paid it, relying on his legal remedy to recover it back.''

And in *Buckley v. New York, supra,* it was said:

''There is no iron-clad rule which confines an involuntary payment to cases of duress of person or restraint of goods. Money compulsorily paid to prevent an injury to one's property rights comes within the same principle.''

Under these authorities, had appellant paid the sums alleged in his fourth and seventh causes of action in excess of the sums agreed upon to be paid for the trucks, and under the threats, undue advantages and oppression alleged, on the part of the vendor, under protest at the time, we should say he would be entitled to recover such excess sums so exacted; but, so far as the pleadings show, there was no complaint or protest made at the time, and writings only were executed for the future payments for the trucks in installments. The most that could be said would be that, under such circumstances, had the payments been made under protest and involuntarily, and under such restraint and duress, he would have been entitled to the reformation of the agreements. He has not alleged facts sufficient

to so entitle him in this action as to these causes of action.

The judgment is therefore affirmed.

Parker, C. J., Main, Mackintosh, and Hovey, JJ., concur.